## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| JEFFREY C. HELBING,<br>    PLAINTIFF, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:11-CV-704-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Jeffrey C. Helbing ("Helbing") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act ("SSA"). Helbing applied for disability insurance benefits in June 2009, alleging disability commencing March 31, 2008. (Tr. 13, 140-47.) His application for benefits was denied initially and on reconsideration. (Tr. 13, 99-102.) An Administrative Law Judge ("ALJ") held a hearing on September 9, 2010 and issued a decision on October 27, 2010, finding that Helbing was not disabled or entitled to disability

1

insurance because he had the ability, if he stopped his substance use, to perform jobs that existed in significant numbers in the national economy. (Tr. 10-30, 40-88.) The Appeals Council denied Helbing's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age,

2

education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUES

Helbing presents the following issues:

1. Whether the ALJ properly established that alcoholism was a material factor contributing to Helbing's disability;[1]

---

[1] The Court notes that Helbing, in his brief, listed two separate issues relating to alcoholism. (*See* Pl.'s Br. at 14-18.) The Court will consider both issues together.

2. Whether the ALJ properly considered all of Helbing's limitations in determining his residual functional capacity ("RFC"); and

3. Whether the ALJ properly evaluated the credibility of Helbing and the testimony of his wife.

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his October 27, 2010 decision, the ALJ found that Helbing met the disability insured status requirements of the SSA through December 31, 2012 and that he had not engaged in any substantial gainful activity since March 31, 2008, the date his disability allegedly commenced. (Tr. 15.) The ALJ further found that Helbing had the severe impairments of "generalized anxiety disorder, alcohol dependence, and post-traumatic stress disorder." (*Id.*) The ALJ held that, if Helbing stopped the "substance use," he "would continue to have a severe impairment or combination of impairments." (Tr. 17.)

The ALJ next found that Helbing's impairments, including the "substance use disorder" met sections 12.06 and 12.09 of the Listing but that if he "stopped the substance use" then none of his impairments or combination of impairments would meet or equal the severity of any impairment in the Listing. (Tr. 16-17.) As to Helbing's RFC, the ALJ stated:

> If the claimant stopped the substance abuse, the claimant would have the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk about 6 hours in an 8-hour day, and he can sit for about 6 hours in an 8-hour day. He must periodically alternate sitting and standing to relieve pain or discomfort. He has no postural, manipulative, visual, or communicative limitations. He must avoid work around excessive heat, noise, or vibrations. He is able to understand, remember, and carryout detailed, but not complex, instructions, and he is able to make judgments on detailed, but not complex, work related decisions. He can only have incidental contact with the general public, but he is able to interact appropriately to supervisors and coworkers. He is also able to respond appropriately to work pressures and changes in a work setting.

4

(Tr. 18 (emphasis omitted).)  The ALJ opined, based on his RFC assessment, that Helbing, even if he stopped the substance use, would be unable to perform his past relevant work.  (Tr. 25.) However, the ALJ determined that, if Helbing stopped the substance use, there "would be a significant number of jobs in the national economy that Helbing could perform."  (Tr. 25.) Consequently, the ALJ found that Helbing was not disabled.  (Tr. 25-64.)

## V. DISCUSSION

### A. Alcoholism

First, Helbing claims, in essence, that the ALJ erred by finding him addicted or dependent upon alcohol because he does not satisfy the diagnostic criteria for "alcohol dependence" pursuant to section 303.90 of the Diagnostic and Statistical Manual of Mental Disorders.  (Pl.'s Br. at 14-15.)  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 213 (4th ed. (text revision) 2000) ("DSM-IV-TR").  However, Helbing has failed to cite to any legal authority that the ALJ must make an independent determination whether Helbing meets the provision of section 303.90 of the DSM-IV-TR.  In this case, medical evidence in the record clearly establishes that Helbing was diagnosed by an "acceptable medical source"[2] with "alcohol dependence" pursuant to section 303.90 of the DSM-IV-TR on several occasions.  (*See, e.g.*, Tr. 246, 355; *see also* Programs Operations Manual System ("POMS") § DI 90070.050(B).)  It is not error for the ALJ to rely on such medical evidence in making his disability determination.

---

[2] Under the SSA, an "acceptable medical source" is one who can provide evidence to establish an impairment and includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists under the SSA regulations.  20 C.F.R. § 404.1513(a).

Next, Helbing argues that there is no evidence to support the ALJ's finding that Helbing's dependence upon alcohol was a contributing factor material to his determination of disability. (Pl.'s Br. at 15-18.) Specifically, Helbing argues:

> In the instant case, the evidence does not support the ALJ's conclusion that Mr. Helbing is "dependent" upon alcohol. Testimony of the Plaintiff reflects that he continues to have panic episodes and anxiety attacks even when he has not consumed alcohol for weeks at a time. Both Mr. Helbing and his wife have indicated that the Plaintiff's abstention from alcohol does not seem to make a difference in the frequency and severity of his anxiety attacks. Extensive testing of Dr. Anagnostis and of Dr. Farr indicate that the plaintiff has deep seated anxiety and personality disorders with wide-ranging psychopathology, likely to cause significant interpersonal and psychological difficulties in work-related situations.
>
> Dr. Lankford, the SAMC, prepared a Psychiatric Review Technique Form (PRTF) in which he diagnosed alcohol *abuse* but not alcohol dependence or addiction. Dr. Lankford did not prepare a separate PRTF to evaluate the Plaintiff's functioning with consideration of alcohol dependence and another PRTF to consider his level of functioning absent alcohol dependence, as is typical in these cases. Rather, the SAMC only prepared one PRTF, to evaluate Mr. Helbing's functional limitations. Thus, the state agency physician did not find that alcohol dependence was material to the Plaintiff's disability.
>
> Hence, the ALJ has failed to establish that the Plaintiff would not be disabled but for his use of alcohol and has not separated the effect of substance abuse from the mental impairment. Had the ALJ wished to further explore this question, he could have called upon the services of a medical expert witness, or posed interrogatories to an expert witness. He failed to do so. Accordingly, it appears that the ALJ substituted his own medical judgment for that of the evidence of record, which he is not patently qualified to do.

(Pl.'s Br. at 16-17 (internal citations omitted).)

Under the SSA, an individual will not be considered disabled for the purposes of disability insurance benefits if alcoholism or drug addiction was a contributing factor material to

the Commissioner's determination that the individual is disabled.[3] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a). If there is evidence of substance abuse and the ALJ makes a determination of disability, the ALJ must determine whether the substance abuse is a contributing factor material to the disability determination. *See* 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a). If the substance abuse is a contributing factor material to the determination of disability, the claimant will not be found disabled. 20 C.F.R. § 404.1535(b).

The key factor an ALJ examines when making such a determination is whether a claimant is still disabled absent the use of drugs or alcohol. 20 C.F.R. § 404.1535(b). Pursuant to 20 C.F.R. § 404.1535(b)(1), the ALJ must first determine whether Helbing was disabled by his physical and mental limitations. *See also* POMS § DI 90070.050(B). Next, the ALJ must decide if there is "medical evidence" of drug addiction or alcoholism. *Id.* If so, then the ALJ must determine if the claimant's substance use or addiction disorder is "material" to the disability determination. If the substance use or addiction is material, then the individual cannot be considered disabled, but, if it is not material, then the individual can be considered disabled. *Id.*

In determining whether the substance use or addiction is material, the ALJ must decide which of the claimant's current physical and mental limitations would remain if he stopped abusing alcohol, and then determine whether any or all of the claimant's remaining limitations would be disabling. *See* 20 C.F.R. § 404.1535(b); *McGoffin v. Barnhart*, 288 F.3d 1248, 1251 (10th Cir. 2002). If the claimant's remaining limitations are not disabling, drug and alcohol abuse is deemed a contributing factor material to the disability determination and the claimant

---

[3] Congress amended the SSA in 1996 after enacting the Contract with America Advancement Act ("CAAA"). *See Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007). The purpose of the CAAA was "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Id.* at 747.

cannot receive benefits.  20 C.F.R. § 404.1535(b).  The burden is on the claimant to prove that his remaining impairments would be disabling absent drug and alcohol abuse.  *Id.*; *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).  Evidence sufficient to support an ALJ finding on the materiality issue in drug or alcohol abuse cases is strongly dependent upon the facts in each case. *Brown*, 192 F.3d at 499.  "On the other hand, the ALJ must support his determination regarding the effect of the claimant's substance abuse with substantial evidence."  *Cravin v. Astrue*, No. 5:07-CV-222-C, 2008 WL 2923867, at *3 (N.D. Tex.  July 30, 2008) (citing *Brown*, 192 F.3d at 499).

Based upon the analysis and findings of the ALJ, it is clear that the ALJ followed the proper procedure in analyzing Helbing's substance abuse as it related to his claim for disability. The ALJ found that Helbing had several severe impairments, including alcohol dependence, that were disabling.  (Tr. 15-16.)  Ultimately, the ALJ, based upon the evidence in the record, concluded that Helbing's alcohol use was a contributing factor material to Helbing's determination of disability because he would not be disabled absent the alcohol use.  Thus, the ALJ concluded that Helbing was not disabled.

The ALJ's disability determination should be upheld as long as there is substantial evidence to support his determination that Helbing's alcohol abuse was a contributing factor material to his determination of disability.  *See, e.g., Cravin*, 2008 WL 2923867, at *3 ("In this case, the ALJ was required to support with some medical evidence the conclusion that prior to April 8, 2005, had [the claimant] not used marijuana, she would have been capable of performing sedentary work involving incidental contact with the public.")  In this case, the ALJ relied, *inter alia*, on the following evidence in determining that Helbing's alcohol abuse was a contributing

8

factor material to his determination of disability: (1) an October 5, 2009 examination in which Christopher Anagnostis, Ph.D. ("Dr. Anagnostis"): (a) diagnosed Helbing with PTSD, panic disorder without agoraphobia, alcohol dependence, and narcissistic personality disorder; (b) noted that Helbing's "alcohol abuse was likely related to his anxiety" and that Helbing's "alcoholism and narcissistic personality were likely to complicate his other issues;" and (c) "recommended that [Helbing] even enroll[] in an intensive alcohol rehabilitation program" (Tr. 17; *see* Tr. 343-56); and (2) evidence that during Helbing's multiple visits in 2008 and 2009 with Michael Ampelas, M.D. ("Dr. Ampelas"), his treating physician, Helbing's PTSD and anxiety were noted to be reasonably well controlled and that Helbing was engaging in alcohol use during the vast majority of the visits when Helbing was complaining of anxiety. (Tr. 23-24; *see* Tr. 20-21, 282-316.) Based upon this evidence, the Court concludes that there is substantial evidence to support the ALJ's decision that Helbing's alcohol use was a contributing factor material to his determination of disability and that, absent such alcohol use, Helbing was not disabled. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Consequently, remand is not required.

**B. RFC Determination**

Helbing also argues that the ALJ failed to include in the RFC determination all of the functional limitations that the ALJ recognized Helbing suffered from. (Pl.'s Br. at 18; *see* Pl.'s

9

Br. at 18-20.)   Specifically, Helbing argues the ALJ erred by: (1) failing to incorporate the limitation of moderate deficiencies of concentration, persistence, or pace found in the "special technique" into the RFC determination; (2) discounting the opinion of a treating physician without applying the factors set forth in 20 C.F.R. § 404.1527; and (3) failing to incorporate into the RFC determination the limitations found by an SAMC.

### 1.   Incorporating Limitations Found in "Special Technique"

As to the first issue, Helbing states:

> The ALJ found that, absent alcohol abuse . . . , the Plaintiff would have mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace. [In the RFC determination, the ALJ] found that absent substance use, Mr. Helbing could perform detailed but not complex tasks with only incidental contact with the general public; but is able to interact appropriately to supervisors and coworkers; and respond appropriately to work pressures and changes in a work setting. This is not a sufficient evaluation of the limitations which the ALJ found to exist and the ALJ's determination is not consistent with the evidence of record.
>
> . . . .
>
> . . . Here, the ALJ did not even limit Mr. Helbing [to the performance of simple, unskilled, one or two step tasks]. He found that despite moderate limitations in concentration, persistence and pace, Mr. Helbing was only limited in performing complex tasks. *A fortiori*, the ALJ's determination is not supported by the evidence.

(Pl.'s Br. at 18-20 (citations omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a.  In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and

10

laboratory findings that substantiate the presence of each impairment. 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c).[4] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[5] and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[6] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. § 404.1520a(d)(1).

---

[4] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[5] The category of concentration, persistence or pace refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[6] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing. 20 C.F.R. § 404.1520a(d)(2).[7] To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

RFC is what an individual can still do despite her limitations.[8] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The exertional and nonexertional capacity "must be expressed in terms of

---

[7] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

[8] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

work-related functions." *Id.* at *6. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*

The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7. In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The RFC assessment is based upon "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. *Id.* When the ALJ considers non-exertional limitations,[9] he is to consider all work-related limitations and restrictions that do not depend on an individual's physical strength and is to express such non-exertional capacity in terms of work-related functions. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation,

---

[9] A "non-exertional limitation" is a limitation or restriction which affects a claimant's "ability to meet the demands of jobs other than what the strength demands." 20 C.F.R. §§ 404.1569a(a), 416.969a(a).

and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A.

1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the

extent the SSR discusses the former procedures used to determine disability in children).

In this case, while analyzing Helbing's mental impairment pursuant to the "special

technique" under the regulations, the ALJ concluded that, absent "alcohol abuse," Helbing had:

(1) a mild degree of limitation in his activities of daily living; (2) moderate difficulties in

maintaining social functioning; (3) moderate deficiencies in concentration, persistence or pace;

and (4) no episodes of decompensation. (Tr. 23.)  The ALJ further stated:

> In reaching these conclusions, I note that the claimant's symptoms were
> improved with Dr. Ampelas's treatment.  Furthermore, I note that the claimant's
> mental status examinations revealed that his concentration, attention, and memory
> were adequate.   That finding was mirrored during multiple visits with Dr.
> Ampelas.   Additionally, during his last visit with Dr. Ampelas, the claimant's
> PTSD and anxiety were noted to be reasonably well controlled.
>
> Furthermore, I note that a large majority of the visits during which the
> claimant complained of anxiety, the claimant was also engaging in alcohol use.
> Despite these facts, I have recognized that the claimant still suffers from some
> limitations as a result of his anxiety disorder.   Additionally, I have given the
> claimant the benefit of all possible doubt, given the objective medical evidence of
> record. *However, I do not find that the objective medical evidence supports a
> finding of more than a moderate restriction in the areas of social functioning and
> concentration, persistence, or pace and has [sic] found these restrictions limit the
> claimant [in the mental RFC determination] to the performance of detailed, but
> not complex, instructions and only incidental contact with the public.* The
> objective medical evidence, when viewed in the light most favorable to the
> claimant, does not warrant further limitations.

(Tr. 23-24 (emphasis added).)  As to Helbing's mental RFC, the ALJ also found that, if Helbing

stopped the substance use, he would be able to: (1) make judgments on detailed, but not

complex, work related decisions; (2) have only incidental contact with the general public; (3)

14

interact appropriately with supervisors and coworkers; and (4) respond appropriately to work pressures and changes in a work setting. (Tr. 18.)

In making his determinations regarding Helbing's mental impairments under the "special technique" and RFC, the ALJ relied, *inter alia*, on the following evidence on the record: (1) a March 18, 2009 examination in which Dr. Ampelas noted that Helbing "had a normal mood, affection, attention span, and concentration level" (Tr. 20; *see* Tr. 297); (2) a March 23, 2009 examination in which Dr. Ampelas noted that Helbing's "mood, affect, attention span, and concentration level were normal" (Tr. 21; *see* Tr. 291); (3) a May 21, 2009 examination in which Dr. Ampelas again noted that Helbing's "mood, affect, attention span, and concentration level were normal" (Tr. 21; *see* Tr. 286); (4) an October 2009 mental status examination in which Dr. Anagnostis noted that Helbing's "memory, attention, and concentration were adequate" (Tr. 21; *see* Tr. 350-51); and (5) an August 3, 2009 Mental Residual Functional Capacity Assessment ("MRFC") in which Charles Lankford, Ph.D. ("Dr. Lankford"), a state agency medical consultant ("SAMC"), opined, *inter alia*, that Helbing was not significantly limited in his ability to carry out detailed instructions or to maintain attention and concentration for extended periods. (Tr. 24; *see* Tr. 331-34). In addition, the ALJ considered a medical source statement completed by Dr. Ampelas on August 20, 2010 in which Ampelas found that Helbing had "marked limitations in his ability to sustain concentration, persistence and pace, functioning, and ability to adapt to changes." (Tr. 22; *see* Tr. 358-61.)[10]

---

[10] In this medical source statement, Dr. Ampelas opined that Helbing was markedly limited in his ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) work in coordination with or proximity to others; (5) complete a normal work-day and week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of

In his decision, the ALJ noted that Dr. Ampelas had primarily treated Helbing's symptoms of anxiety since September 2008, when Helbing first visited Dr. Ampelas. (Tr. 20.) The ALJ discussed the examination records from Helbing's subsequent visits to Dr. Ampelas in October 2008, November 2008, February 2009, March 2009, and May 2009. (Tr. 20-21.) In addition, the ALJ acknowledged Dr. Ampelas' August 20, 2010 medical source statement but ultimately decided to give it "little weight." (Tr. 22). Specifically, as to this statement, the ALJ stated:

> On August 20, 2012, Dr. Ampelas completed a questionnaire regarding the claimant's limitations and functional capacity. In that document, Dr. Ampelas noted that the claimant had marked limitations in his ability to sustain concentration, persistence and pace, functioning, and ability to adapt to changes. Dr. Ampelas based these restrictions on his "serial examinations", and noted that the restrictions existed since March 31, 2008. However, Dr. Ampelas stated that he had only treated the claimant since May 2009.

> . . . .

> I have carefully considered Dr. Ampelas' opinion regarding the claimant's functional capacity. However, I do not find that Dr. Ampelas' opinion is consistent with his notations during his actual treatment with the claimant. Dr. Ampelas noted that he based his limitations upon "serial examinations" with the claimant. However, as outlined above, Dr. Ampelas noted multiple times that the claimant's psychiatric examination was unremarkable. Additionally, both the claimant and Dr. Ampelas noted that his symptoms improved with treatment. While I note that the claimant intermittently complained of anxiety during his treatment with Dr. Ampelas, the objective medical evidence does not support Dr. Ampelas' limitations. Additionally, I find that [the] document that Dr. Ampelas

---

rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (7) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) travel in unfamiliar places or use public transportation; and (9) set realistic goals or make plans independently of others. (Tr. 358-59.) In addition, Ampelas opined that Helbing was moderately limited in his ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple and detailed instructions; (3) carry out very short and simple instructions; (4) sustain an ordinary routine without special supervision; (5) make simple work-related decisions; (5) ask simple questions or request assistance; (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (7) respond appropriately to changes in the work setting; and (8) be aware of normal hazards and take appropriate precautions. (Tr. 358-59.)

completed is internally inconsistent with the objective medical records. Dr. Ampelas notes that he had treated the claimant since May 2009. However, the objective medical evidence shows that Dr. Ampelas' treatment with the claimant began in September 2008 and ended in May 2009. While this error may appear small, I find that if Dr. Ampelas is unable to determine when he has seen the claimant, there are serious questions regarding the validity of his limitations that are based on those visits. Lastly, I note that Dr. Ampelas completed this document in August 2010, at the request of the claimant's representative, even though he had not actually seen the claimant since May 2009. The length of time that had passed between Dr. Ampelas' last visit with the claimant and the date he assessed the limitation has further eroded the validity and credibility of Dr. Ampelas' opinion. Therefore, based on the above, I have given little weight to Dr. Ampelas' opinion.

(Tr. 22 (internal citations omitted).)

Helbing argues, in essence, that the ALJ erred in his mental RFC assessment because the ALJ's finding in the "special technique" of a moderate deficiency in concentration, persistence, and pace is not related or analogous to a functional limitation in being able to understand, remember, and carry out detailed, but not complex, instructions and that the ALJ should have included additional limitations in his mental RFC determination. As noted above, the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In this case, the ALJ, based on all of the evidence in the record, determined, in essence, that Helbing's moderate limitation in concentration, persistence, and pace found in the "special technique" analysis affected his RFC as a limitation that Helbing could only perform work that involved detailed, but not complex, instructions. The paragraph B criteria limitation of having a moderate deficiency in concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). Instead, it is used to rate the severity of Helbing's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id*. "The mental RFC assessment used at

17

steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." *Id.* The RFC assessment includes consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6. "While the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into . . . the RFC determination." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

Based on the specific facts in this case, the ALJ's RFC determination limiting Helbing to only performing work that involved detailed, but not complex, instructions does not appear to be inherently contradictory with the ALJ's finding in the "special technique" that Helbing was moderately limited in his ability to maintain concentration, persistence, or pace. To begin with, the ALJ clearly recognized in his decision that he was required to evaluate Helbing's mental impairments pursuant to the "special technique" set forth in the regulations. (Tr. 23.) In performing such an evaluation, the ALJ found that Helbing suffered from moderate deficiencies of concentration, persistence, and pace. (Tr. 23.) Then, based on substantial evidence in the

record, the ALJ specifically detailed why this limitation only warranted a limitation to the performance of detailed, but not complex, instructions.[11] (Tr. 24.)

The record indicates that the ALJ incorporated Helbing's functional limitations from his mental impairment into the RFC based upon the ALJ's careful evaluation of the evidence in this case. The ALJ properly discussed the evidence in the record in making his RFC determination, explained the reasoning for his RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because there is substantial evidence in the record that supports the ALJ's evaluation of Helbing's mental impairments as well as his mental RFC assessment, remand is not required.

---

[11] *See, e.g., De La Rosa v. Astrue*, No. EP-10-CV-351-RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012) (holding that the ALJ's finding that claimant had a moderate limitation in concentration, persistence, and pace was properly accounted for in an RFC determination that claimant was, *inter alia*, able to understand, remember, and carry out detailed but not complex instructions, and make decisions, attend and concentrate for extended periods); *Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010) ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC assessment that [the claimant] could not perform work that involves complex instructions."); *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (holding, in essence, that the ALJ's finding that the claimant had a moderate limitation in concentration, persistence, and pace was not inconsistent with his RFC determination that claimant could understand, remember, and carry out more than simple instructions); *Adams v. Astrue*, No. CV 07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."); *Hodgson v. Astrue*, No. 4:07-CV-529-Y, 2008 WL 4277168, at *8 (N.D. Tex. Sept. 16, 2008) ("[The claimant] has not demonstrated that a restriction [in the RFC determination] to simple one- and two-step tasks did not adequately accommodate her moderate difficulty maintaining concentration, persistence or pace."). *See also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("Based on this record, the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive tasks adequately captures [the claimant's] deficiencies in concentration, persistence or pace."); *Anderson v. Astrue*, No. 09-0971-TC, 2011 WL 1655552, at *3 (D. Or. Mar. 25, 2011) ("Moderate, and even marked limitations in the ability to maintain attention, concentration, persistence or pace are compatible with the ability to perform unskilled jobs involving simple tasks."). *But see Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (finding that claimant's impairment in concentration, persistence, or paces was not accommodated by limitation to simple tasks in the hypothetical to the vocational expert because it did not account for deficiencies in pace); *Owen v. Astrue*, No. 3:10-CV-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) ("As determined by several courts, a finding that Plaintiff can perform unskilled work is fatally flawed where the ALJ has found Plaintiff to have moderate limitations in concentration, persistence, or pace.")

## 2.  Opinion of Treating Physician

Helbing also argues that the ALJ failed to properly evaluate Dr. Ampelas' August 20, 2010 medical source statement. (Pl.'s Br. at 21; *see* Tr. 358-61.) Helbing argues that the ALJ erred by discounting Dr. Ampelas' medical source statement, which was consistent with the findings of other doctors, without applying the factors set forth in 20 C.F.R. § 404.1527. (Pl.'s Br. at 22-23.)

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining physician, . . . an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d 448, 453 (5th Cir. 2000)

20

(emphasis in original).  Under the statutory analysis of 20 C.F.R. § 404.1527(c), the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); *see also* SSR 96-6p, 1996 WL 374180, at *3; SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).[12]

Although the ALJ did not make an explicit finding as to each of the factors in 20 C.F.R. §§ 404.1527(c), his discussion of Dr. Ampelas' medical source statement and other medical opinions shows that he considered each factor in reaching his decision to, in essence, reject Dr. Ampelas' statement.  As to factors one and two, it is apparent that the ALJ was aware of the examining relationship and treatment relationship between Dr. Ampelas and Helbing as the ALJ specifically indicated that Dr. Ampelas was one of Helbing's treating physicians and referenced various dates on which Dr. Ampelas had treated Helbing during the relevant time period.  (Tr. 20-23.)  As to factors three, four, and six, the ALJ indicated that he gave Dr. Ampelas' opinions in the August 20, 2010 medical source statement "little weight" because they were, *inter alia*, inconsistent with Dr. Ampelas' own treatment notes and not consistent with the other medical

---

[12] Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

evidence of the record. (Tr. 22.) Prior to reaching this conclusion, the ALJ went through a

detailed recitation of the other medical evidence in the record, including the findings of multiple

other doctors.[13] (Tr. 16-25.)

Because the ALJ did properly follow the statutory analysis prior to rejecting Dr.

Ampelas' opinion, the next issue is whether the ALJ provided "good cause" for rejecting the

opinions of Dr. Ampelas' in his August 20, 2010 medical source statement. In this case, it is

clear that the ALJ did consider Dr. Ampelas' opinions, including the August 2010 medical

source statement, in determining Helbing's RFC. In addition, the ALJ set forth reasons for

rejecting Dr. Ampelas' opinions, finding, in essence, that such opinions were not consistent with

the other objective medical evidence in the record, including Dr. Ampelas' own treatment notes.

Because the ALJ ultimately determined, based on substantial medical evidence and other

evidence in the record, that Dr. Ampelas' opinions in the medical source statement should be

rejected and provided good cause for rejecting such opinions, remand is not required.[14]

### 3. SAMC Opinion

Helbing also argues that the ALJ erred by failing to properly incorporate into the RFC

determination the limitations found by Dr. Lankford, a SAMC. (Pl.'s Br. at 20-21.) In a Mental

Residual Functional Capacity Assessment ("MRFC") dated August 3, 2009, SAMC Lankford

---

[13] As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5); see 20 C.F.R. § 416.927(c)(5). See also Newton, 209 F.3d at 455. Factor five does not apply here because Dr. Ampelas is a primary care physician and not a specialist. Thus, his opinion is entitled to no additional weight under this factor.

[14] Because the Court concludes that the ALJ did perform a detailed analysis of Dr. Ampelas' August 20, 2010 medical source statement under the factors set forth in 20 C.F.R. §§ 404.1527(c), it is not necessary to determine whether there was other reliable medical evidence from another treating or examining physician that controverts Dr. Ampelas' evaluation.

found that Helbing was moderately limited in his ability to: (1) work in coordination with or proximity to others without being distracted by them; (2) accept instructions and respond appropriately to criticism from supervisors; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extreme; and (4) respond appropriately to changes in the work setting.  (Tr. 331-32.)  Helbing argues that the ALJ erred by making a mental RFC determination that, as relevant here, only limited Helbing to incidental contact with the public but failed to place any limitations, as found by the SAMC, on his ability to interact appropriately with supervisors and co-workers.  Specifically Helbing states:

> The ALJ failed to explain his reasons for disagreement with the limitations reported by the state agency consultant.  The ALJ specifically indicated that he gave "great evidentiary weight" to the state agency physician's opinion in determining Plaintiff's functional abilities but failed to consider all of the limitations reported by the SAMC or his reasons for disagreement with those opinions.  Thus, he has not fully evaluated the evidence of record and failed to consider all of the limitations established in this record.

(Pl.'s Br. at 20-21 (citations omitted).)

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review.   20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *2-4. Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions.  SSR 96-6p, 1996 WL 374180, at *2.

23

As to SAMC Lankford's opinion in this case, the ALJ stated:

> In accordance with 96-6p, I have considered the administrative findings of fact made by the State Agency medical consultant regarding the claimant['s] mental impairments (Exhibit 5F). This opinion is weighed as a statement from a non-examining source. After reviewing the objective medical evidence and credible testimony, I find that the limitations found in the above-mentioned statement [are] supported as detailed above. However, as mentioned above, I have given the claimant the benefit of all possible doubt concerning his allegations of anxiety and panic attacks. In doing so, I have limited the claimant to incidental contact with the public and precluded him from work around excessive heat, noise, or vibration. Accordingly, the State Agency opinion is granted great evidentiary weight in determining the claimant's functional abilities, but only insofar as it is consistent with the above residual functional capacity.

(Tr. 24.) Based on the foregoing, it is clear that the ALJ properly analyzed SAMC Lankford's opinion in his decision. The ALJ acknowledged his obligation to consider the findings of fact made by SAMC Lankford, specifically referred to SAMC Lankford's MRFC, and stated that he was giving such opinion "great evidentiary weight in determining [Helbing's] functional abilities, but only insofar as it is consistent with" his RFC determination. (Tr. 24.) As stated above, the ALJ is not required to incorporate limitations that he did not find to be supported in the record. In this case, the ALJ did not incorporate the limitations found by SAMC Lankford regarding Helbing's ability to interact appropriately with supervisors and co-workers because the ALJ did not find such limitations were supported by the additional medical evidence in the record. Because substantial evidence supports the ALJ's RFC determination and the ALJ properly considered SAMC Lankford's opinion, remand is not required.[15]

---

[15] In addition, any error by the ALJ to fully analyze or incorporate SAMC Lankford's opinion into the RFC determination would have been harmless as there is substantial evidence in the record that supports such determination. See *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected.").

**C.  Credibility and Consideration of Testimony of Witness**

In his brief, Helbing argues that the ALJ failed to properly evaluate his credibility and consider the testimony of Helbing's wife, Gabriella Bendslev.  (Pl.'s Br. at 23-25.)  Helbing claims that, pursuant to SSR 96-7p, the ALJ must evaluate an individual's credibility pursuant to specific factors and that the ALJ erred by not doing so.  As to the consideration of his wife's testimony, Helbing states:

> [The ALJ] gave "very little consideration" to the testimony of Plaintiff's spouse, finding such testimony to be inconsistent with "the objective medical evidence of record."  This is an improper basis for evaluating lay testimony.  The Commissioner has determined that information from other non-medical sources (e.g., spouse, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy) may also be used to show the severity of an individual's impairments and how these impairments affect the individual's ability to work or function.

(Pl.'s Br. at 24-25 (citations omitted).)

In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms.  20 C.F.R. § 404.1529(b); SSR 96-7p, 1996 WL 374186, at *2.  Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities.  20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2.  A claimant's testimony must be consistent with the objective medical evidence and other available evidence.  20 C.F.R. § 404.1529.  When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that

precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 CFR § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3.

"Credibility determinations by an ALJ are entitled to deference." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 3:07-CV-1749, 2008 WL 4791319, at *12 (N.D. Tex. Oct. 30, 2008) (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)). "The ALJ is in the best position to assess a claimant's credibility since the ALJ 'enjoys the benefit of perceiving first-hand the claimant at the hearing.'" *Alexander*, 2008 WL 4791319, at *12 (quoting *Falco v. Shalala*, 27 F.3d at 164 n.18). "Nevertheless, the ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *4. Pursuant to SSR 96-7p, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* (citing 20 C.F.R. § 404.1529(c)(4)).

A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). An ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and articulates reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

In his decision, the ALJ acknowledged that he had a duty to evaluate the credibility of statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms that are not substantiated by the objective medical evidence. (Tr. 18.) After setting forth in detail the statements Helbing and his wife had made at the hearing before the ALJ (Tr. 18-20), the ALJ stated:

> If the claimant stopped the substance use, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Tr. 20; *see* Tr. 18-20.) The ALJ then went through the medical evidence in the record, as set forth above. (Tr. 20-24.)

As to Helbing's credibility, the ALJ stated:

> In reaching my finding as to the claimant's residual functional capacity, I considered the objective findings on the claimant's examinations and the

27

claimant's subjective complaints, as detailed above.  However, absent the claimant's alcohol abuse, the objective medical evidence does not support a finding of disability.  Therefore, I found that the claimant's allegations, including his testimony, have only minimal credibility and are not credible to the extent they are inconsistent with the above residual functional capacity.  The objective medical evidence, when considered in the light most favorable to the claimant, does not warrant further limitations.

(Tr. 24-25.)  As to his consideration of Bendslev's testimony, the ALJ stated:

Pursuant to SSR 06-03p, I have considered the testimony from Ms. Bendslev.  However, I find that the objective medical evidence of record, as detailed above, does not fully support the limitations that she testified to at [the] hearing.  Therefore, I have given this statement from Ms. Bendslev very little consideration.

(Tr. 23.)

Contrary to Helbing's claims, the ALJ did make a proper determination as to the credibility of Helbing and properly considered the testimony of his wife, Bendslev.  The ALJ chose not to give Helbing and Bendslev's statements regarding Helbing's pain and other symptoms of disability much credence because they were not supported by the objective medical evidence in the record, which included evidence that (1) Helbing's anxiety appeared to worsen when Helbing was engaging in alcohol use, (2) Helbing's symptoms improved with treatment, and (3) Helbing's PTSD and anxiety were noted to be reasonably well controlled.  (Tr. 20-24.)

Although the ALJ could have been more precise in setting forth the factors in 20 C.F.R. § 404.1529, it is clear from his decision that he did consider such factors.  To begin with, the ALC acknowledged that he had a duty to consider "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§] 404.1529 and SSRs 96-4p and 96-7p." (Tr. 18.)  As to factors one and seven of the factors set forth in 20 C.F.R. § 404.1529(c) and SSR

28

96-7p, the ALJ reviewed Helbing's daily activities, noting that Helbing testified that on a typical day he watched television three hours per day, read, and took care of most of the housework and that his wife took care of the finances.  In addition, the ALJ acknowledged that Helbing testified that he: (1) could not mow the yard; (2) could walk twenty to twenty-five minutes at one time; and (3) could not go to the movies, theatre, be exposed to loud noise, or get a haircut because of anxiety and panic attacks. (Tr. 19.)  As to factors two and three, the ALJ noted, *inter alia*, the following: (1) Helbing did not drive most places because his medications make him drowsy; (2) Helbing had panic attacks daily and that any activity that lasted longer than thirty to forty minutes would start a panic attack; and (3) Helbing's anxiety appeared to worsen when Helbing was engaging in alcohol use. (Tr. 18-24.)  As to factor four, the ALJ recognized that Helbing was taking a variety of medications, which made him drowsy.  (Tr. 19-25.)  As to factors five and six, the ALJ noted that Helbing testified that drinking beer makes him feel better when his medications are not working but that Helbing and Bendslev do not think that drinking has an effect on him because he continues to have panic attacks even after he cut back on his drinking. (Tr. 19.)  Because the ALJ properly went through the section 404.1529 factors in evaluating Helbing's credibility and adequately explained the weight he assigned to Helbing's subjective complaints and Bendslev's testimony based on a thorough review of the other evidence in the record, the Court concludes that the ALJ did not err in evaluating Helbing's credibility or Bendslev's testimony.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

29

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **November 12, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 29, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv